AC

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES W. LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 01 C 9483 |
| vs. ) | |
| ) | Magistrate Judge Morton Denlow |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Charles W. Lewis ("Plaintiff" or "Claimant"), challenges the decision of Defendant Jo Anne B. Barnhart, Commissioner of Social Security ("Defendant" or "Commissioner"), claiming that her denial of Plaintiff's request for Supplemental Security Income benefits ("SSI") should be reversed or remanded because the Administrative Law Judge ("ALJ"): (1) did not give sufficient weight to the treating physician's opinion; (2) failed to consider Plaintiff's obesity in combination with his other impairments; (3) failed to consider evidence of Plaintiff's urinary frequency, fatigue and arthritis; (4) failed to perform Plaintiff's credibility determination in accordance with SSR 96-7p; and (5) failed to separately assess Plaintiff's disability prior to his carpal tunnel syndrome release surgery for the period February 15, 1995 to October 10, 1997.[1]

---

[1] Plaintiff's counsel withdrew this fifth argument during oral argument.

This case comes before this Court on Plaintiff's motion for summary judgment and Defendant's motion for summary judgment. For the reasons stated below, this Court denies Plaintiff's motion for summary judgment and grants the Commissioner's motion for summary judgment.

## I. BACKGROUND FACTS

### A. PROCEDURAL HISTORY.

Plaintiff filed applications for SSI benefits on February 15, 1995, alleging a disability as of December 31, 1992. R. 36, 38. A hearing was held by Administrative Law Judge Michael Bernstein on October 6, 1997. R. 361-98. The ALJ issued an unfavorable decision on February 10, 1998. R. 184-96. The Appeals Council granted a review and remanded the matter on October 15, 1999. R. 207-09.

A second hearing was held on May 4, 2000, by Administrative Law Judge Maren Dougherty. R. 402-42. ALJ Dougherty issued an unfavorable decision on October 25, 2000. R. 9-17. The Appeals Council denied the request for review on January 19, 2001. R. 5-6.

Claimant filed a timely complaint with this Court seeking review of the ALJ's decision. On May 8, 2003, the Court remanded the claim for a new administrative hearing because the file could not be located. In 2005, the Commissioner located the missing administrative record and moved to reinstate the case. Claimant now seeks judicial review of the Commissioner's October 25, 2000 decision pursuant to 42 U.S.C. § 405(g). The parties have consented to this Court's jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c)(1). The Court conducted an oral argument on November 29, 2005.

## B. HEARING TESTIMONY.

### 1. Claimant's Testimony.

On May 4, 2000, Plaintiff appeared with a non-attorney representative and testified before ALJ Dougherty. Plaintiff is 5'10-1/2" tall and weighed 308 pounds at the time of the hearing. R. 408. He is a high school graduate. *Id.* He last worked as a photographer in 1987. R. 409. Plaintiff was 48 years old at the time of the hearing. R. 407. Plaintiff testified that he was capable of a variety of daily activities. Plaintiff cooked and could use a manual can opener. R. 420. He rode his bicycle to the grocery store twice a week, did his own laundry, and cleaned his apartment. R. 420-21. He could push and pull a shopping cart, but had difficulty writing for long periods of time. R. 422. Plaintiff visited his brother's house and also visited his niece and nephews, read, watched television, listened to the radio, went fishing, and went to the library to use the Internet a couple of times a week. R. 423. Plaintiff could also garden; he had a plot at a community garden near his home where he planted tomatoes, peppers and cucumbers. R. 427-28.

Plaintiff said that at most he could walk two or three blocks. R. 421. When he had difficulty he slowed down and stopped for a while, and tried to bend over a few times to stretch. *Id.* He reported sharp pain in his toes, which prevented him from putting weight on his feet for more than ten minutes. R. 410. Climbing stairs caused shortness of breath. He avoided bending because it seemed to cut off his breath. R. 422. He could write, but he developed cramps in his hand if he held a pen or pencil too long. *Id.* His legs became numb

3

and he had to stretch them after sitting for half an hour to 45 minutes at a time. R. 433. He complained of shortness of breath with exertion. R. 410.

Plaintiff described bilateral tunnel carpal syndrome, which was worse in his right arm. R. 411. The surgery eliminated some of the pain but he still could not do some things. R. 412. He also reported not having much control of the left arm. R. 431. He could not carry something for a long time with his hand closed. R. 413.

He claimed difficulty with sustained grip, however, he played the flute. R. 412. He attended class twice a week and practices in between. R. 427. He complained of drowsiness affecting his concentration, yet, he read instructional books, used a computer to access the Internet, went to Bingo and movie nights in his building, fished, watched television, and played pool. R. 428-35.

### 2. James Radke - Vocational Expert.

The Vocational Expert ("VE"), James Radke, also testified. R. 436-41. The VE was asked to consider a person of Plaintiff's age, education, and past relevant work experience who could lift up to 20 pounds occasionally and 10 pounds frequently, is unlimited in his ability to sit or stand, but could only occasionally walk, could not climb stairs or ladders, and could not work around pulmonary irritants. R. 437-38. The VE testified that this person could perform work as a ticket agent (3,600 jobs in the region), cashier (23,500 jobs in the region), assembler (21,200 jobs in the region) and a photo processor (1,100 jobs in the region). R. 438. If the person could not perform repetitive, forceful gripping with either

4

hand and could only perform occasional bending, that person could still perform work as a ticket agent, cashier, photo processor and production inspector, and could perform a reduced number of assembler positions. R. 439. If the person were limited to sedentary[2] work, that person could still perform work as a production inspector, ticket agent, cashier, assembler, and photo processor. R. 439.

C.     **MEDICAL EVIDENCE.**

### 1. Dr. Rodney Berger - Consulting Physician.

On August 22, 1995, Claimant was examined by Dr. Rodney Berger. R. 62-9. Claimant's physical "examination was essentially unremarkable." R. 67. Dr. Berger opined that Claimant had a full capacity to sit, bend, stand and climb, with a 20% reduced capacity to walk and stoop, and was limited to repeated lifting of up to 10 pounds. R. 65. He retained a full capacity to perform activities of daily living, social functioning, concentration, persistence and pace. *Id.*

### 2. Cook County Hospital - September 1, 1995 and May 1, 1996.

On September 1, 1995, Claimant sought treatment for "on and off" pain in both feet. R. 85. An x-ray confirmed hallux valgus[3] deformities secondary to degenerative disease. R. 89. On May 1, 1996, Plaintiff was diagnosed with carpal tunnel syndrome causing mild symptoms and was prescribed Ibuprofen and the use of hand splints. R. 181.

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles such as ledgers, docket files or small tools. 20 C.F.R. § 416.967(a).

[3] Hallux valgus is defined as a deformity of the feet caused by an osteoarthritic degenerative condition in the joint of the big toe. American Medical Association, *Complete Medical Encyclopedia*, 626 (1st ed. 2003).

### 3. Dr. Peter Biale - Consulting Physician.

On October 2, 1995, Dr. Peter Biale examined Plaintiff and observed a full range of motion of all joints, a normal gait and an unimpaired bilateral finger grasp and hand grip. R. 71. He had full strength in his upper and lower extremities. R. 72. He became short of breath only upon exertion. R. 70. Dr. Biale identified the following clinical impressions: 1) an enlarged heart; 2) diabetes mellitus for which he was taking Glucotrol; 3) bronchial asthma precipitated only by exertion; 4) obesity; 5) bilateral carpal tunnel syndrome; 6) painful feet; and 7) hypertension. R. 72-3. Plaintiff presented with foot problems due to a spur in the base of the first metatarsal. R. 71.

### 4. Dr. Hilton Gordon - Consulting Physician.

On January 11, 1996, Dr. Hilton Gordon conducted a consulting exam at the request of the state agency. R. 120-31. Dr. Gordon noted the following clinical impressions: 1) carpal tunnel syndrome bilaterally; 2) non-insulin dependent diabetes mellitus; 3) obesity; 4) shortness of breath on exertion; and 5) aching in both big toes, possibly secondary to bone spurs. R. 121. Plaintiff denied polyuria (excessive urination), polydispia (excessive thirst), neuropathy, infections or ulcers. R. 120. Plaintiff had no redness, swelling or deformity of any joint. R. 121. There was tenderness on the bottom of both feet. *Id.* His fist grip and dexterity were normal along with gross and fine manipulations of both hands. *Id.* He had some reduced range of motion in his knees and ankles due to his obesity. *Id.* Plaintiff's gait and spirometry report were normal. R. 121, 126.

### 5. Dr. Ernest C. Bone - Non-Examining State Agency Physician.

On February 7, 1996, Dr. Ernest C. Bone reviewed Plaintiff's medical records and opined that based on Plaintiff's obesity, he was limited to occasional climbing, kneeling, crouching and crawling. R. 133-39. He opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit for a total of 6 hours in an 8-hour workday, and had no limits in pushing or pulling. R. 133. This determination represents an ability to perform medium work. *See* 20 C.F.R. § 416.967(c) (defining medium work as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds").

### 6. Dr. Kurt Robinson - Family Practitioner - Treating Physician.

On July 22, 1997, Plaintiff's treating physician, Dr. Kurt Robinson, completed an Illinois Department of Public Air Report of Incapacity. Dr. Robinson treated Plaintiff for three years. R. 164. He found Plaintiff's respiratory exam to be normal. R. 165. Plaintiff was able to ambulate normally, but slowly, and had decreased range of motion in his lumbar spine. *Id.* Dr. Robinson opined that Plaintiff had a 20% - 50% reduction in his capacity to perform most work-related functions and that he was limited to repeated lifting of no greater than 10 pounds. R. 167.

### 7. Heel Pain and Carpal Tunnel Surgery.

On February 5, 1997, Plaintiff reported experiencing bilateral heel pain. R. 251. Plantar fascitis was diagnosed and Plaintiff was prescribed Ibuprofen. *Id.* Plaintiff returned

a month later and reported a 25% improvement in his symptoms. R. 250.

On October 10, 1997, Plaintiff underwent right carpal tunnel release surgery. R. 266-98. Following surgery, Plaintiff was considered to be doing well and was advised to discontinue wearing his hand splint. R. 245.

**D. THE ALJ'S DECISION - OCTOBER 25, 2000.**

After conducting the hearing and reviewing the evidence, the ALJ found that Claimant was not disabled as defined in the Social Security Act. R. 9-17. The ALJ found that Plaintiff had the residual functional capacity to perform light work reduced by certain exertional and non-exertional limitations. R. 16.

The ALJ assessed Plaintiff's application for SSI under the five step sequential analysis. *See infra,* Part II B (describing the disability standard). Under step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period. R. 12, 16. Under the second step, the ALJ determined that Claimant had the following medically determinable severe impairments: carpal tunnel syndrome status-post release surgery on the right arm, obesity, hypertension, non-insulin dependent diabetes mellitus and hallux valgus deformity of the feet with some bone spurs. R. 12, 16. At step three, however, the ALJ found that Plaintiff's severe impairments did not meet or equal a listed impairment under the Social Security regulations. *Id.*

At step four, the ALJ determined Plaintiff's residual functional capacity and ability to perform his past relevant work. The ALJ found that Plaintiff's "impairments limit him in

that he cannot lift or carry more than 20 pounds occasionally or 10 pounds frequently, walk more than occasionally, climb, work around concentrated pulmonary irritants and perform repetitive forceful gripping." R. 16. Thus, the ALJ determined that Plaintiff could not perform his past relevant work as a photographer. *Id.* At step five, the ALJ found Plaintiff able to perform light work including the following available jobs: 23,500 cashier positions, 3,000 assembler positions, 1,100 photo processing positions, and 40,000 production inspection positions. *Id.* Therefore, the ALJ concluded that Plaintiff is not disabled and not eligible for SSI. R. 17.

## II. LEGAL STANDARDS

### A. STANDARD OF REVIEW.

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support the findings. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A mere scintilla of evidence is not enough. *Id.* Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if "the reasons given by the trier of fact do not build an accurate and logical bridge between the

evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

While a reviewing court must conduct a "critical review" of the evidence before affirming the Commissioner's decision, *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), it may not re-evaluate the facts, re-weigh the evidence, or substitute its own judgment for that of the Social Security Administration. *Diaz*, 55 F.3d at 305-06. Thus, judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence to support the findings. *Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1991). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

**B. DISABILITY STANDARD.**

Disability insurance benefits ("DIB") are available to claimants who can establish "disability" under the terms of Title II of the Social Security Act ("Title II"). *Brewer v. Charter*, 103 F.3d 1384, 1390 (7th Cir. 1997). Supplemental Security Income benefits ("SSI") are available to "disabled indigent persons" under Title XVI of the Social Security Act ("Title XVI"). *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Titles II and XVI of the Social Security Act employ the same definition of "disability." *Id.* That is, an individual is disabled if that individual has the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual is under a disability if he is unable to do his previous work and cannot, considering his age, education, and work experience, partake in any gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To make this determination, the Commissioner must employ a five step sequential analysis. 20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f). If the ALJ finds at any step of this process that a claimant is not disabled, the inquiry ends. *Ismahel v. Barnhart,* 212 F. Supp. 2d 865, 872 (N.D. Ill. 2002). Under this process, the ALJ must inquire: (1) whether the claimant is still working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) if the claimant does not suffer from a listed impairment, whether he can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

### III. DISCUSSION

Claimant raises four issues for review: (1) whether the ALJ failed to give sufficient weight to the opinion of Dr. Robinson, the treating physician; (2) whether the ALJ considered Plaintiff's obesity in combination with his other impairments; (3) whether the ALJ failed to consider evidence of Plaintiff's urinary frequency, fatigue and arthritis; and (4) whether the ALJ's credibility determination of Plaintiff was proper.

A. **THE ALJ PROPERLY EXPLAINED THE REDUCED WEIGHT SHE GAVE TO DR. ROBINSON'S OPINION.**

No doctor ever opined that Plaintiff was disabled. Dr. Robinson opined that Plaintiff had a 20-50% reduced capacity for walking, sitting, pulling, bending, turning, standing, climbing, stooping, pushing and performing hand manipulations. R. 167. At a 50% reduction, Dr. Robinson's opinion is consistent with Plaintiff's ability to perform at least sedentary work. *See* 20 C.F.R. § 416.967(a) (defining sedentary work as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools"). Dr. Robinson opined that Plaintiff was limited to lifting 10 pounds repeatedly, which is consistent with the demands of light work. *See* 20 C.F.R. § 416.967(b) (defining light work as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds"). The VE testified that a person who was limited to sedentary work could still perform a significant number of jobs. R. 438. Therefore, Dr. Robinson's opinion does not support a conclusion that Plaintiff is disabled. On the contrary, his opinion is consistent with the ability to perform not less than sedentary work. And as the court in *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989), stated, "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."

A treating physician's opinion is given controlling weight by the ALJ if he finds it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

12

not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not given controlling weight, the ALJ applies the following factors in determining the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) the amount of relevant evidence that supports the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician; and (6) any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6). Finally, the ALJ "will always give good reasons in [his] notice of determination or decision for the weight [he] give[s] [the] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

The ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence exists to support the ALJ's decision so long as a "reasonable mind might consider the supporting evidence contained in the record to be adequate." *Ellis v. Barnhart*, 384 F. Supp. 2d 1195, 1201 (N.D. Ill. 2005) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). A contrary opinion by a non-treating physician does not constitute substantial evidence. *Gudgel*, 345 F.3d at 470. However, "[i]t is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.927(f)(2)(1)).

In the instant case, the ALJ provided an adequate explanation for her decision to give

Dr. Robinson's opinion "little weight." R. 15. The ALJ fully discussed the medical evidence, R. 12-15, and concluded that Dr. Robinson's opinion identified few objective findings to support his opinion. R. 15. For example, testing showed that Plaintiff's finger grasp and hand grip were unimpaired in both hands and his gross and fine manipulation of both hands was normal. R. 12, 72, 121. Therefore, the ALJ reasonably concluded that Dr. Robinson's opinion finding 20% - 50% reduction in finger dexterity, gross manipulation and fine manipulations was not supported by objective medical evidence when the objective testing showed that he was unimpaired in these areas of functioning.

**B.   THE ALJ ADEQUATELY ACCOMMODATED PLAINTIFF'S OBESITY.**

The ALJ fully considered and reasonably accommodated Plaintiff's obesity by limiting him to only occasional walking and climbing, lifting only 10 pounds frequently and 20 pounds occasionally, and avoiding concentrated exposure to pulmonary irritants. The ALJ recognized Plaintiff's obesity in her decision, R. 12, 13, and expressly stated that Plaintiff "has decreased pulmonary functioning secondary to morbid obesity." R. 16. Furthermore, Plaintiff has not specified how his obesity further impairs his ability to work. Here, the ALJ considered Plaintiff's obesity in connection with his other conditions by limiting Plaintiff to work that did not require concentrated exposure to pulmonary irritants. The ALJ accommodated his foot problems and obesity by restricting him to only occasional walking and climbing.

## C. THE ALJ DID NOT FAIL TO ANALYZE SIGNIFICANT EVIDENCE.

Plaintiff argues that the ALJ failed to analyze Plaintiff's complaints of urinary frequency, fatigue and arthritis pain. Plaintiff does not explain what further limitations he believes he is entitled to as a result of these subjective complaints, other than those already provided by the ALJ.

There is no evidence that Plaintiff was medically treated for urinary frequency. Plaintiff denied urinary frequency to Dr. Gordon and emergency room personnel. R. 120, 168. Plaintiff cites only a complaint of urinary frequency to Dr. Robinson, not a diagnosis. R. 164, 323. Moreover, Dr. Robinson did not opine that Plaintiff had any limitations due to this complaint.

To the extent Plaintiff claims fatigue with exertion, the ALJ limited him to light work that involved only occasional walking and climbing. Plaintiff's complaints of arthritis pain were accommodated by a limitation to only occasional walking. Dr. Robinson opined that Plaintiff could walk for four hours in an eight-hour workday. The ALJ did not fail to consider this evidence.

## D. THE ALJ'S CREDIBILITY FINDING WAS NOT PATENTLY WRONG.

The ALJ's credibility finding is entitled to substantial deference and will not be disturbed unless patently wrong. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Dixon v Massanari*, 270 F.3d 1171, 1178-79 (7th Cir. 2001) ("Because the ALJ is in the best position to observe witnesses, we will not disturb her credibility determinations as long as

they find some support in the record."). In order to support his determination that a claimant's testimony is not credible, the ALJ must explain how the allegations are inconsistent with the medical findings in the record. *Johansen v. Barnhart,* 314 F.3d 283, 288 (7th Cir. 2002) (summarizing *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001)). However, an ALJ's credibility finding will not be reversed merely because the ALJ did not "specify which statements were incredible," or "provide an evidentiary basis for the credibility finding." *See Jens v. Barnhart,* 347 F.3d 209, 213 (7th Cir. 2003). Where the record provides adequate support for the ALJ's credibility finding, the finding may be affirmed. *See id.* Furthermore, when faced with evidence both supporting Plaintiff's claims and detracting from Plaintiff's claims, the Seventh Circuit recognizes that "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart,* 279 F.3d 441, 444 (7th Cir. 2002).

Here, the ALJ reasonably found that Plaintiff's subjective complaints were not credible because they were not supported by objective medical evidence and were inconsistent with his activities of daily living, which included using a computer to go on the Internet, grocery shopping, attending movies, playing Bingo, gardening, fishing, cooking, doing laundry, and riding his bicycle. "These activities reflect a greater level of activity than expected given the Claimant's statements about pain and limitations arising therefrom." R. 14. The ALJ gave specific reasons for her credibility finding, and her determination will be upheld because it is not patently wrong.

Plaintiff argues that the ALJ failed to follow the requirements of Social Security Ruling 96-7p in reaching her credibility determination. In assessing Plaintiff's subjective complaints, the ALJ reasonably found that Plaintiff was not entirely credible. Consistent with the requirements of SSR 96-7p, the ALJ reasonably contrasted Plaintiff's daily activities with his alleged limitations. For example, the ALJ considered that Plaintiff's alleged difficulty with sustaining grip was inconsistent with his testimony that he played flute. *See* 20 C.F.R. § 404.1529(c)(3)(i). The ability to play the flute was only one of many inconsistencies the ALJ identified in assessing Plaintiff's credibility. The ALJ also considered that Plaintiff's grip and grasp testing were normal upon examination and that he had normal strength in his hands. *See* 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence"). The ALJ also considered other activities which were inconsistent with Plaintiff's allegations: including the ability to use a computer, play Bingo, fish, and ride his bike, all of which required use of his hands. The record also showed that Plaintiff could play pool and maintain a garden. Based on the record as a whole, the ALJ reasonably found that Plaintiff's subjective complaints were not entirely credible.

Plaintiff argues that his daily activities did not mean that he could sustain an eight-hour, five day a week work schedule. The Seventh Circuit recently rejected a similar argument in *Johansen*. 314 F.3d at 288. While the Court acknowledged that "minimal" daily activities did not necessarily contradict a claim of disability, the Court doubted whether the

claimant's daily activities (e.g., performing his home exercise and traction program, grocery shopping, doing laundry, driving a car, and walking one mile daily) qualified as truly "minimal." *Id.* (citing *Scott v. Sullivan*, 898 F.2d 519, 524 n. 6 (7th Cir. 1990) (claimant's testimony that he could help out around the house, carry groceries, set the table, ride a bike, and go hunting and fishing supported ALJ's conclusion that claimant was not limited to sedentary work)). Plaintiff's activities in this case are more extensive than those of the claimant in *Johansen*. Moreover, as in *Johansen*, ALJ Dougherty adequately explained how Plaintiff's allegation that he could not perform light work was inconsistent with the record viewed as a whole and she did not solely rely on Plaintiff's ability to perform daily activities in finding him not credible.

## IV. CONCLUSION

No doctor ever opined that Plaintiff was disabled or could not work. The ALJ carefully considered the evidence before her and clearly stated her reasons for concluding that Plaintiff was not disabled. Her conclusion is supported by substantial evidence. **Therefore, for the reasons set forth in this opinion, Plaintiff's Motion for Summary Judgment is denied and the Commissioner's Motion for Summary Judgment is granted and the ALJ's decision dated October 25, 2000 is affirmed.**

**SO ORDERED THIS 4th DAY OF JANUARY, 2006.**

_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies Mailed To:**

Barry A. Schultz
1609 Sherman Avenue
Suite 205
Evanston, IL 60201
**Counsel for Plaintiff**


Anne Lipnitz
Special Assistant U. S. Attorney
200 West Adams Street
30th Floor
Chicago, IL 60606
**Counsel for Defendant**